**O. A. CARGILL, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 8566.**

United States Court of Appeals
Tenth Circuit.

Aug. 11, 1967.

Rehearing Denied Sept. 6, 1967.

Leslie L. Conner, Oklahoma City, Okl.
(James M. Little, Leslie L. Conner, Jr.,

O. A. Cargill, Jr., and David Cargill, Oklahoma City, Okl., with him on the brief), for appellant.

David A. Kline, First Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., with him on the brief), for appellee.

Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.

SETH, Circuit Judge.

Appellant was indicted on three counts for perjury, was convicted by a jury, and takes this appeal. The charges stemmed from his answers to questions asked during his appearance before a federal grand jury in 1964. In Count I the questions concerned his knowledge of $150,000 withdrawn from Selected Investments Corporation by a Hugh A. Carroll; in Count II his knowledge of a person named "Pierre Laval" or of a story about him; and in Count III appellant is charged with falsely denying having any financial transactions with Justices of the Oklahoma Supreme Court.

Considering Counts I and II above, it appears from the record that the strongest evidence against appellant was the testimony of witnesses Carroll and N. S. Corn. Carroll was a former officer of Selected Investments Corporation, and Corn a former Justice, or supernumerary, of the Oklahoma Supreme Court. The testimony of Carroll during trial was that appellant Cargill had fabricated the "Pierre Laval story" to explain the disposition of the $150,000 withdrawn from Selected Investments actually used to "pay" certain justices for a favorable decision from the Oklahoma Supreme Court. Appellant represented witness Carroll in the Selected Investments bankruptcy proceedings in March 1958, where Carroll testified regarding the $150,000 and Pierre Laval. Witness Corn testified during the trial below as to financial transactions that he had had with appellant.

It appears that witness Carroll decided to "tell the truth" a day or so before he, Carroll, appeared before the federal grand jury investigating income tax law violations. Carroll appeared before the grand jury on April 6, 1964, a day before appellant appeared. Carroll was granted immunity from further federal or state prosecutions before he testified to the grand jury.

In December 1964, some eight months after appellant appeared before the grand jury, witness Corn, who was then serving a federal sentence, made a lengthy deposition implicating appellant in the Oklahoma Supreme Court bribery scandal and asserting appellant's financial dealings with justices of the court. It appears that Corn, who had pleaded nolo contendere to a charge of income tax evasion, was also granted immunity from further federal or state prosecution.

The federal grand jury which indicted appellant met again in February 1965, some nine or ten months after appellant's last appearance before the grand jury, and about one or two months after Corn made his deposition.

The appellant urges, among other things, that he was improperly denied by the trial court the transcripts of the grand jury testimony of the witness, Hugh A. Carroll, which he requested for cross-examination of the witness, and we should reverse on Counts I and II for this reason.

The record shows on this issue that appellant prior to his trial below, and pursuant to rule 6(e) of the Federal Rules of Criminal Procedure, moved for the production of a copy of his own testimony, and also the testimony of Hugh A. Carroll and others, given before the grand jury. The trial court granted this motion only as to appellant's own testimony. A motion was also made before trial under the Jencks Act for the production of certain statements.

Appellant during the course of his trial, and more particularly after the direct examination of the principal witness for the United States, Hugh A. Carroll, and before his cross-examination, made a request for the production of certain documents, transcripts, and

statements. Appellant's attorney then asked whether the District Attorney "has any statements or copies of statements from this witness at any time so that we may examine them for the purpose of cross-examining this witness?" Thereafter, and still before cross-examination, there was an extended discussion of the type of statements sought by the appellant, and a request was then made for a transcript of the testimony of the witness before the grand jury " * * * concerning the matters he has testified to here, before the grand jury on, I believe, April 6, 1964, which certainly we would not ᵥhave access to." This request referred to the witness Carroll, and a subsequent request was made specifically for the grand jury testimony of this witness. The United States Attorney stated that the grand jury testimony was "not producible under 3,500 * * *." The court responded, "I'll sustain an objection as to the grand jury testimony at this time * * *." Discussion was had as to transcripts of other proceedings had in open court. The appellant then again requested the grand jury transcript of the testimony of the witness, and the court again sustained the objection of the Government to its production. The attorney for the appellant asked that the court examine the testimony of the witness Carroll given before the grand jury, and the court did so. The cross-examination of Carroll then proceeded at some length. At its conclusion, and after redirect and re-cross-examination, and after a discussion of other issues with the jury excused, the court said:

"I might say to you, gentlemen, with respect to this matter of the grand jury transcript that was requested yesterday, that I examined the pages of it ahead of the testimony of the defendant, Mr. Cargill, first hundred and seventy some odd pages of it, and I did that last night, and there's no occasion for changing any ruling based upon that that I know of, because there's no reference to any-

thing other than income tax violations."

From the requests made by the attorney for the appellant, it appears that it began as a request for Jencks-type statements for the purpose of cross-examining the witness Carroll, and was later during the course of the discussions among the attorneys and with the court expanded to include a specific request for the grand jury transcript of witness Carroll's testimony for the same purpose.

From its statement and the action taken by the trial court, it appears that the court understood the purpose of the request to be for the grand jury testimony to cross-examine Carroll. The ruling of the trial court was in June 1965 which was about a year before the Supreme Court's decision in Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (June 20, 1966), which considered the production of grand jury testimony of witnesses. The appellant urges that the trial court's ruling was reversible error under Dennis and otherwise.

The Supreme Court opinion in Dennis begins with a reference to the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts," citing United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077, and notes further that when the disclosure is made, "it is to be done discretely and limitedly." The opinion continues with a reference to rule 6(e) of the Federal Rules of Criminal Procedure and states that disclosure is proper after the jury's functions are ended. The Court retains the requirement that "particularized need" be shown in order that the secrecy may be lifted, but holds *in effect* that such need is shown when the defense states that it wishes to use the transcript for the purpose of impeaching a witness, to refresh his recollection, or to test his credibility. Thus the Court as far as cross-examination is concerned has removed most, if not all, of the substance from the particularized need

requirement, although it has retained the term. Under this opinion, it appears that the defense is entitled to the grand jury transcript of the witness's testimony when the jury's functions are ended, and when the request is made during the course of trial that it is necessary for the purpose of cross-examining such witness for the above mentioned purposes. The Supreme Court mentions and relies to some extent on the rationale of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, on this point. The Court also states that "* * * it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations. * * *"

Under the record in the case before us, as to Counts I and II, the appellant has brought himself within the Supreme Court's decision in Dennis v. United States, supra, as to his trial request for the transcript of the testimony of Carroll. We hold that it was error for the court not to have complied with the request.

It is recognized that the Court in Dennis had before it an extreme case in view of the long delay which occurred between the witness's grand jury testimony and his court appearance, while here the delay is some fourteen months. However, the reasoning of the Court in Dennis is applicable despite the difference in the facts and we are bound by it.

The record shows that the trial court considered the request for the testimony in June 1965, during the course of the trial. Our opinion in the second Dennis case, 346 F.2d 10, 11, was dated April 26, 1965, and the Supreme Court opinion reversing is dated June 20, 1966. Thus the trial court did not have the benefit of the Supreme Court's opinion when it acted.

There is created under Dennis a division of duties among the trial judge, the attorney for the defense, and the attorney for the Government. The trial court still has the duty and may be limited as follows, quoting from Dennis:

"The trial judge's function in this respect is limited to deciding whether a case has been made for production, and to supervise the process: for example, to cause the elimination of extraneous matter and to rule upon applications by the Government for protective orders in unusual situations, such as those involving the Nation's security or clearcut dangers to individuals who are identified by the testimony produced. * * * *"

Thus in the case at bar the attorney for the defendant made a proper and specific request for a transcript of the witness's grand jury testimony to be used in his cross-examination, and under Dennis it should have been furnished to him absent only a motion for a protective order. In the event of "unusual situations," a protective order is sought, the trial court must examine in camera the testimony sought to be "eliminated," and if an order is entered the material must be preserved for consideration in the event of an appeal. It is however the duty of the attorneys for the Government to be alert for the need for such protective orders when requests for transcripts are made. This is not the responsibility of the trial judges under the Dennis decision. The Supreme Court so refers to protective orders in "unusual situations" as where the Nation's security is involved or where there is presented clearcut danger to individuals who are identified by the testimony.

The case before us concerns a specific and clear request for a transcript of a named witness's grand jury testimony needed for his cross-examination, and we decide that it should have been produced for such a purpose. The cases developing the rule announced in Dennis concern the use of testimony in cross-examination to impeach a witness, to refresh his recollection, or to test his credibility. In Dennis the transcripts were sought for such purposes, and we con-

sider that the opinion is implicitly so limited. The Second Circuit in United States v. Youngblood, 379 F.2d 365 (2d Cir.) (June 21, 1967), has considered the issues here present, and laid down a somewhat broader rule.

■ The appellant also made several pretrial motions seeking the production of the grand jury testimony of several witnesses, including the witness Carroll. This was denied several months before the trial, and a second request was denied immediately before the trial. These requests were in most general terms and would have required a broad pretrial disclosure of the testimony of many of the witnesses. The request was based only on the assertion of the appellant that such disclosure would serve the ends of justice or aid in the preparation for trial. These requests were much too broad and do not come within the Dennis rule.

Count III of the indictment charges that the appellant falsely denied ever having had " * * * any financial transactions with any justices of the Oklahoma Supreme Court." The appeal on this point does not involve the production of transcripts of testimony given before the grand jury considered above. Instead the appellant, in addition to the asserted errors relating to all the charges, urges that there was insufficient evidence to prove the charge under the rules pertaining to perjury.

We held in Doty v. United States, 261 F.2d 10 (10th Cir.), that guilt of perjury must be established by the testimony of two independent witnesses or by one witness and corroborating evidence which is inconsistent with the accused's innocence. See also Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495. The record before us shows that the facts pertaining to financial transactions were testified to by the witness Corn with reference to money received in a certain case. The witness Marshall testified that he paid appellant a sum of money, and that appellant said the witness would lose the case if he " * * * didn't take care of the boys on the hill." There was also evidence that the sum paid by Marshall was provided by a third person and was receipted for by appellant as a fee. Appellant was not counsel of record in the case concerned, and another attorney testified that he handled the case by himself in the trial court and in the Oklahoma Supreme Court.

The record shows that there was sufficient evidence provided to the jury in accordance with the "two witness" rule. The appellant urges that the testimony was by accomplices and does not constitute corroboration. We however held to the contrary in Doty v. United States, 261 F.2d 10 (10th Cir.), which also arose in Oklahoma.

■ The record contains substantial evidence as to Count III, and we find no error on the issue here considered.

■ Appellant also urges several errors and grounds for reversal which go to all the counts. Among these, the appellant urges that the grand jury proceedings had reached a point where they were accusatory as to him; and thus he should have been warned of his constitutional rights. However the fact that the charge was perjury is a sufficient answer to this contention together with the case of United States v. Winter, 348 F.2d 204 (2d Cir.). It is apparent that the accused was facing a dilemma, but there was nothing to prevent him from asserting his rights. Appellant is a practicing attorney of many, many years' experience and was certainly well aware of his right to remain silent. Kitchell v. United States, 354 F.2d 715 (1st Cir.).

■■ We find no basis for the assertion that appellant was denied a fair trial because the trial judge did not recuse himself. The record shows that the judge conducted the proceedings firmly and impartially. Likewise we find no error in the selection of the jury nor in the conduct of the attorneys for the Government.

The grand jury was investigating matters well within its jurisdiction, and the charge here concerned arose out of these proceedings.

■ The trial court acted properly in overruling appellant's motion for a verdict of acquittal, as there was adequate evidence then before the jury.

■ Also we find no error in the manner in which the trial court handled the asserted separation of the jurors.

■ The trial court instructed on good character in conformance with Johnson v. United States, 269 F.2d 72 (10th Cir.), and Oertle v. United States, 370 F.2d 719 (10th Cir.), and we find no error.

The conviction and judgment on Counts I and II are set aside for the reasons above stated. The judgment and conviction on Count III are affirmed.