# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

—————————

m 98-11330
Summary Calendar

—————————

WILLIAM GARY BRADBERRY,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

—————————————

Appeal from the United States District Court
for the Northern District of Texas
(3:97-CV-2510)

—————————————

April 6, 2000

Before SMITH, BARKSDALE, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

William Bradberry pleaded guilty to molesting a child and received a life sentence. On this appeal of the denial of habeas corpus relief, he argues that the state trial court erred in failing *sua sponte* to order a formal hearing to determine his competency to enter a guilty plea and that his counsel ineffectively represented him in failing to request such a hearing. Finding no reversible error, we affirm.

———————————
[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

Bradberry filed two state applications for writs of habeas corpus. The first was filed in Van Zandt County and challenged the validity of a burglary conviction that had been used to enhance his sentence. No findings of fact were apparently made, and the Court of Criminal Appeals denied the application without a hearing. The second challenged various aspects of his sexual assault plea and the validity of the enhancement charge, including a challenge to his competency to stand trial.

The trial court made findings of fact and conclusions of law without a hearing, recommending denial of the application. With respect to competency, the court stated that "[a]pplicant's testimony during the course of Applicant's trial . . . clearly shows that Applicant was competent to stand trial." The Court of Criminal Appeals denied the application without written order.

Bradberry filed his first federal habeas petition pursuant to 28 U.S.C. § 2254, raising the claims set forth in his first state application. He then filed a second § 2254 petition, raising essentially the same claims as those set forth in the second state application. The magistrate judge ordered consolidation of the cases, then recommended dismissal, rejecting most of Bradberry's claims on the merits and finding one claim procedurally barred.

Bradberry filed objections. The district court conducted *de novo* review of the record, adopted the findings of the magistrate judge, and dismissed the petitions. Bradberry filed a timely notice of appeal and a motion for leave to proceed *in forma pauperis* ("IFP"). He then moved for a certificate of probable cause ("CPC"). The district court granted IFP status and denied a certificate of appealability ("COA"). This court granted a COA on the following issues:

(1) whether the trial court was required *sua sponte* to conduct a competency hearing upon the elicitation of evidence that Bradberry had attempted suicide several times in the year before the hearing; and

(2) whether Bradberry's attorney was ineffective for failing to move for a competency hearing upon learning this information.

## II.

Bradberry's petition is subject to review under the Antiterrorism and Effect Death Penalty Act of 1996 (the "AEDPA"), because it was filed after April 24, 1996.[1] *See* 28 U.S.C. § 2254.

AEDPA provides that a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997), *cert. denied*, 119 S.Ct. 144 (1998) (holding that AEDPA applies to a petition filed by state prisoner after April 24, 1996).

28 U.S.C. § 2254(d). Section 2254(d)(1) provides the standard of review for questions of law and mixed questions of law and fact, whereas § 2254(d)(2) provides the standard of review for questions of fact. *Drinkard v. Johnson*, 97 F.3d 751, 767 (5th Cir. 1996). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[2] We review the federal district court's findings of fact for clear error, but questions of law are decided *de novo*.[3]

### III.

Bradberry asserts that the trial court erred by failing to order *sua sponte* a competency hearing before accepting his guilty plea. He suggests that "[e]xtensive evidence" was presented to the trial court regarding his incompetency, including the records of Dr. Reagan Andrews, the Veteran's Administration psychiatrist who had seen Bradberry for years; and of recent suicide attempts. Bradberry asserts that because the trial court did not ask him whether he understood the nature of the proceedings or their impact or whether Bradberry was on medication, the evidence "strongly suggests" that he was not competent to enter a guilty plea.

The conviction of a legally incompetent defendant violates constitutional due process. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966). The competency standard for pleading guilty is the same as the competency standard for standing trial: "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has a 'rational as well as factual understanding of the proceedings

against him.'"[4]

> [W]hen a prisoner, either state or federal, seeking post-conviction relief, asserts, with *substantial facts to back up his allegation*, that at the time of trial he was not mentally competent to stand trial, and that there was no resolution of that precise issue before he was tried, convicted and sentenced, the protection of the Fourteenth Amendment to the Constitution requires that such conviction and sentence be set aside unless upon adequate hearing it is shown that he was mentally competent to stand trial.

*Lee v. Alabama*, 386 F.2d 97, 105 (5th Cir. 1967) (en banc) (emphasis added, footnote omitted). The movant must present facts sufficient "to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental capacity . . . to meaningfully participate and cooperate with counsel." *United States v. Williams*, 819 F.2d 605, 609 (5th Cir. 1987) (quotation and citation omitted).

A habeas petitioner may obtain relief if he can show that the state procedures were inadequate to ensure that he was competent to stand trial. In some instances, such an understanding arises if the trial court failed to conduct a competency hearing. *Carter v. Johnson*, 131 F.3d 452, 459 n.10 (5th Cir. 1997), *cert. denied*, 523 U.S. 1099 (1998) (pre-AEDPA case).

A state court must conduct an inquiry into the defendant's mental capacity *sua sponte* if the evidence raises a *bona fide* doubt as to competency. *Carter*, 131 F.3d at 459 n.10. In determining whether there is a *bona fide* doubt, the court considers (1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competency. *Davis v. Alabama*,

---

[2] Formerly 28 U.S.C. § 2254(d).

[3] *Earhart v. Johnson*, 132 F.3d 1062, 1064 (5th Cir.) (citation omitted), *cert. denied*, 525 U.S. 933 (1998); *Clark v. Scott,* 70 F.3d 386, 388 (5th Cir. 1995).

[4] *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

545 F.2d 460, 464 (5th Cir. 1977). If the court received evidence, viewed objectively, that should have raised a reasonable doubt as to competency, yet failed to make further inquiry, the defendant has been denied a fair trial. *Carter*, 131 F.3d at 459 n.10.

The record provides much evidence that Bradberry was competent to plead. The state court denied habeas relief because it found that Bradberry's testimony at his guilty plea and sentencing showed he was competent to assist counsel and understand the charges against him. In fact, Bradberry did testify coherently and rationally at his guilty plea hearing, which suggests that he was competent to stand trial.

The trial court also considered, before taking Bradberry's plea, Andrews's report from his years of therapy sessions with Bradberry (which continued until approximately seven months before trial). It indicated that Bradberry suffered from post-traumatic stress disorder ("PTSD"), depression, and "organic brain syndrome" resulting from head injuries in Vietnam and a 1983 suicide attempt that resulted in severe blood loss.

The doctor stated that Bradberry had many physical problems, suffered memory deficits, and functioned at the emotional level of a nine- or ten-year-old. Despite these problems, Andrews believed that Bradberry was "competent to participate in his own defense."[5] The trial court was also aware, from Bradberry's medical history, that he had attempted suicide several times and used to get into bar fights with the hope that someone would kill him.

That the court had all of this information, and that it carefully reviewed Bradberry's psychiatric and medical evaluations before allowing him to testify, require a conclusion that Bradberry suffered no violation of due process rights under *Davis*. Although he obviously had a history of irrational and troubled behavior, he handled himself coherently at trial.

Moreover, Andrews was aware of this history and felt that Bradberry was capable of assisting in his defense. Although Bradberry asserts that Andrews was not judging "competence" under a legal standard, Andrews's notes reveal that Bradberry had made a specific appointment for a formal evaluation at his attorney's request and was "able to discuss his options and possible plans coherently."

All of this tended to show that Bradberry was able to consult rationally with his lawyer and understood the proceedings against him. *See Godinez*, 509 U.S. at 396. Moreover, the trial court viewed Bradberry's behavior throughout the proceedingsSSalways aware of his background and his propensity for strange behaviorSSand found nothing to make him question his original determination that Bradberry was competent.

The trial court was, withal, justified in relying on the submitted psychiatric evaluations and on its own in-court observations. The only piece of psychiatric evidence presented to the court that had not been available to Bradberry's therapist in their extensive consultations was Bradberry's wife's testimony during the plea proceedings that her husband had tried to commit suicide "several times" within the past year, although she did not specify dates. (Bradberry confirmed that he had attempted suicide in early 1994 and also apparently tried to kill himself in early 1995.) Andrews's evaluations noted no suicide attempts after 1983 and does not reveal knowledge of a more recent attempt.

This new suicide-attempt information provides Bradberry's only argument that his constitutional rights were somehow violated.

---

[5] Bradberry makes much of the fact that Andrews discussed with him the benefits of being appointed a "guardian." In context, Andrews was stating that Bradberry had had difficulty managing his financial affairs since his divorce and the suggestion was made that his sister be appointed his "guardian" for his financial dealings only. This statement does not lend much support for Bradberry's assertion that he was incompetent to stand trial.

In *Drope v. Missouri*, 420 U.S. 162 (1975), counsel had filed a pretrial motion stating that his client might be incompetent and included a psychiatric report revealing problems but generally suggesting that Drope was competent. *Id.* at 175. The Court did not hold that the trial court had erred in failing to examine the competency issue further before the trial based on that evidence. *Id.* at 177-78.

*During the course of his trial*, however, Drope attempted suicide, choked his wife, and acted irrationally in other ways. *Id.* at 179-80. His suicide attempt removed Drope from the courtroom for a portion of his trial. Because those irrational events did not occur "in a vacuum," the Court held that the suicide attempt raised sufficient doubt and required further inquiry by the court into competency. *Id.*

As *Drope* indicates, and this circuit has explicated, a suicide attempt by itself is not necessarily sufficient to create "reasonable cause" for a competency hearing. *See United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995). Instead, that evidence must be weighed in conjunction with all the testimony and evidence presented with respect to mental stability and competence. *Id.*

The facts here do not reach the seriousness of those revealed in *Drope*. Bradberry's suicide attempts, however multiple, occurred in the months before the sentencing, not during the period surrounding his plea and proceedings. The court here was able to monitor and evaluate Bradberry's behavior throughout the proceedings; he was never absent. Most importantly, the psychiatric evaluations employed by the court to determine Bradberry's competency to stand trial already accounted for the fact of his suicide attempt and suicidal tendencies.

As noted above, the question of competency to plead is one of whether the defendant can rationally understand his plea and participate with his lawyer in undertaking the plea. Suicide indicates depression and other disorders, but, as the *Drope* Court

recognized, does not necessarily have much weight in determining whether a defendant is rationally "available" for proceedings. *See Drope*, 420 U.S. at 181 n.16. That Bradberry had again attempted suicide after the end of his extensive psychiatric evaluation, but at a time remote from the actual plea and sentencing proceedings, may be slightly probative of a changed rationality with regard to entering a plea, but nothing in our precedent suggests that this *requires* a trial court to hold a new competency hearing rather than relying on a recently completed evaluation. This is true especially given that the evaluation included recordation of a past suicide attempt and a diagnosis of continuing suicidal tendencies, and had found that they did not represent a negation of Bradberry's legal competency.

IV.

The duty of an attorney to a defendant who desires to enter a plea of guilty is to ascertain whether the plea is voluntarily and knowingly made.[6] In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held that the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to guilty pleas. Under *Washington*, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id*. at 687. This circuit has textured the *Washington* test for cases in which the question is whether the defendant was competent to stand trial or enter a plea:

> [A] claim of incompetence is difficult to analyze under the 'outcome' test of [*Washington*], because whether the defendant was guilty or innocent is irrelevant if he was convicted while incompetent. [The defendant] can succeed in establishing that he was prejudiced by his attorney's failure to investigate only if he can demonstrate a reasonable probability that he was incompetent to plead guilty.

---

[6] *United States v. Diaz,* 733 F.2d 371 (5th Cir. 1984); *Moya v. Estelle,* 697 F.2d 329 (5th Cir. 1983).

*Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994).

The burden of proof in a habeas proceeding attacking the effectiveness of trial counsel is on the petitioner, who must demonstrate that ineffectiveness by a preponderance of the evidence. *Martin v. Maggio*, 711 F.2d 1273 (5th Cir. 1983). In determining the merits of an alleged Sixth Amendment violation, courts "must be highly deferential" to counsel's conduct. *Washington*, 466 U.S. at 687. In fact, "a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[7] Finally, counsel is not required to engage in the filing of futile motions and should not be required to raise futile defenses. *See Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984).

Bradberry's counsel did not render deficient performance by failing to move for a competency hearing. In fact, the failure to raise the issue of competency at trial is persuasive evidence that no *Pate* violation occurred. *Reese v. Wainwright*, 600 F.2d 1085, 1092 (5th Cir. 1979). Given Bradberry's testimony and demeanor during the hearing, the medical records from Andrews stating that Bradberry was competent despite his various diagnoses, and the complete absence of any lay testimony suggesting that Bradberry was incompetent or that he could not understand the nature of the criminal proceedings against him, it was not unreasonable for counsel to fail to move for a competency hearing.

The court did not err in deciding from the relevant evidence that Bradberry was competent. Given this understanding, it would be difficult indeed to find that counsel, aware that the court knew much about Bradberry's

mental and emotional history and had taken that history into consideration, rendered ineffective assistance by failing to insist that the court hold an unnecessary formal hearing on the matter.

AFFIRMED.

---

[7] *See Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

**6**